HINES v. MORGAN.

Opinion delivered February 16, 1920.

1.  CARRIERS—LIVE STOCK—DAMAGES FOR FAILURE TO FEED.—In an action by a shipper for damages to mules, evidence *held* to sustain finding that they ate off each other's manes and tails because they were confined in the car without feed or water for more than 36 hours.

2.  CARRIERS—LIVE STOCK SHIPMENT—CONTRIBUTORY NEGLIGENCE.—In an action by a shipper of mules, which ate off each other's manes and tails, *held* that the failure of the shipper to place chemicals on the manes and tails was not negligence as a matter of law where such practice was not universal, and was not required by the carrier.

3.  CARRIERS—DUTY TO CARE FOR LIVE STOCK—INSTRUCTION.—In an action by a shipper against a carrier of live stock which kept the animals confined without feed or water for more than 36 hours, in violation of the act of Congress of June 29, 1906 (U. S. Comp. Stat., §§ 8651-4), an instruction to the effect that it was the carrier's duty to feed and care for the stock, and that it was negligent in failing to do so, was not prejudicial, and the carrier can not complain, particularly where the assumption was on the condition that the carrier would not be responsible if the shipper who accompanied the animals was himself negligent.

4.  CARRIERS — MEASURE OF DAMAGES TO LIVE STOCK.—In an action by a shipper of mules for damages by reason of the loss of their manes and tails, the measure of damages is the depreciation in market value by reason thereof, and recovery can not be defeated on the ground that the mules were as capable of work as before.

Appeal from Ouachita Circuit Court; *C. W. Smith,* Judge; affirmed.

*E. B. Kinsworthy* and *W. R. Donham,* for appellant.

1.   The court erred in giving plaintiff's instruction No. 1.   Taken as a whole it fails to show that the eating of the hair off the manes and tails of the animals was caused by hunger or that keeping the mules in the car more than thirty-six hours was the proximate cause thereof. The injury was caused by inherent vices or natural propensities of the animals.   46 Ark. 236; 83 *Id.* 87.   Besides, it was the duty of plaintiff to look after the stock as to feed and water, as he accompanied the shipment.   No negligence of appellant was proven.   Appellee could have avoided the injury by using a chemical preparation suitable and customary in such cases.   Appellee's instruction No. 1 was error, as it assumes that it was defendant's duty to feed and care for the stock, when he accompanied it, and the burden of proof was on him to prove negligence, and he has failed.   50 Ark. 397; 81 *Id.* 469; 86 *Id.* 469; 93 *Id.* 537; 101 *Id.* 75.   See also 211 ·S. W. 103.

2.   No damage was proved by the eating of the hair off the manes and tails of the mules.   The judgment is without evidence to support it.

*Powell & Smead,* for appellee.

It was not the duty of appellee to use chemicals, and the evidence shows that it is not customary.   The railroad accepted the shipment without protest and knowing no chemicals were used.   This was an interstate shipment, and it was the duty of the railroad to unload the stock within 36 hours and feed and water them, and a railroad can not contract against liability caused by its own negligence nor limit its liability.   93 Ark. 537; 101 *Id.* 289.

The evidence is undisputed that the animals were nearly starved to death and this caused the eating of the manes and tails by reason of being kept confined in the car for so long a period of time without care and the railroad was properly held liable for the damage.

There is no error in the instructions. 211 S. W. 103 is not in point here.

HUMPHREYS, J. This suit was instituted by appellee against appellant in the Ouachita Circuit Court, to recover $405 as damages, caused by the alleged negligence of appellant to feed and water a mixed shipment of mules and horses. Omitting caption and signature, the complaint is as follows:

"Comes the plaintiff, J. B. Morgan, and for his cause of action against the defendant, Missouri Pacific Railway Company, states:

"That the defendant is a corporation engaged in the business of a common carrier by railway in this State, and that as such it entered into a contract with plaintiff, in writing, by which it undertook to transport for him, consigned to himself, a car load of mules and horses from Iola, Kansas, to Stephens, Arkansas, and that said mules and horses were delivered to defendant by plaintiff in good condition and were accepted by it for such shipment on Thursday, the 6th day of December, 1917. That said shipment consisted of twenty-two mules and five horses. A copy of said contract is filed herewith, marked Exhibit 'A,' and plaintiff asks that same be taken as a part of this complaint.

"That in the course of shipment, said car load of mules and horses reached Van Buren, Arkansas, at 4:30 A. M. on Saturday, December 8, 1917, and were unloaded at Van Buren, Arkansas, at 10:18 A. M. on said December 8, 1917, making forty-one hours which said mules and horses were continuously kept in said car. That during said time said horses and mules were kept in said car defendant negligently failed and refused to either feed or water said stock, and as a result said stock became so nearly starved that all of them had their tails and manes entirely eaten off by each other; that by reason of the negligence aforesaid the general condition of all of said stock was greatly impaired; that by reason of the impaired condition of said stock, and the loss of their tails

as aforesaid, the market value of said stock was reduced $405, and plaintiff has been damaged in that sum; that said damage was the result of the negligence of the defendant as aforesaid.

"That said stock was delivered to plaintiff at Stephens, Arkansas, on December 13, 1917, damaged as above stated.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $405, for costs herein and all proper relief."

Appellant filed answer, denying each material allegation in the complaint, and, by way of further defense, alleged that the damage, if any, resulted to the stock on account of appellee's own negligence in failing to put some sort of chemical on the tails of the animals to prevent them from gnawing or eating the hair off of each other's tails.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, upon which a verdict was returned and judgment rendered against appellant in the sum of $405 as damages. From that judgment an appeal has been duly prosecuted to this court.

The undisputed evidence disclosed that appellee shipped a car, consisting of twenty-two mules and five horses, from Iola, Kansas, to Stephens, Arkansas, on the 6th day of December, 1917; that the stock were in good condition when received for shipment; that the mules and horses were continuously kept in the car for forty-one hours without being fed or watered, or stopping and removed from the car for that purpose; that, at the time the shipment reached Van Buren, Arkansas, the mules and horses had been in the car continuously without food or water for over thirty-six hours; that they arrived at Van Buren at 4:30 A. M., December 8, 1917, and, although being requested to do so, appellant failed to unload them until 10:18 A. M. of said date; that the contract of shipment contained a clause relieving appellant from feeding, watering or removing the stock for that purpose within

thirty-six hours from the date of shipment; that appellee accompanied the shipment from Iola, Kansas, to Van Buren.

The evidence on behalf of appellee tended to show that, after the arrival of the shipment at Van Buren, and after thirty-six hours from the time the stock were received for shipment at Iola, and before they were unloaded to be fed and watered, their tails and manes were entirely eaten off by each other on account of their starved condition; that appellee lost from $15 to $25 per head in the sale of the stock, because the hair on their tails and manes had been eaten off; that it was not the general custom to place chemicals upon the tails and manes of animals to keep them from eating the hair on the tails and manes of each other.

The testimony on behalf of appellant tended to show that it was the custom, especially in the West, for shippers to apply chemicals to prevent stock of this character from eating the hair off the tails and manes of each other, on account of their inherent vices or propensities; that chemicals had not been applied to the tails and manes of the horses and mules constituting this particular shipment.

It is contended by appellant that there is no substantial evidence to support the finding of the jury that the injury resulted to the mules on account of hunger or because they were kept in the car more than thirty-six hours continuously after the date of shipment, or that the injury occurred after the thirty-six hour period. Appellee testified that he saw the stock between 9 and 10 o'clock, after the expiration of the thirty-six-hour period, at Van Buren, and that their tails and manes were eaten off at that place, by each other, on account of their hunger or starved condition. This was substantial evidence tending to show that the tails and manes of the animals were eaten off by each other on account of hunger, resulting from being kept in the car continuously for more than thirty-six hours without feed or water. But it is suggested that there is no evidence tending to show that

it was the duty of appellant to feed and water the stock, and, therefore, a failure to do so did not tend to show any negligence on its part. On interstate shipments it is made the duty of carriers to unload stock of this character at periods of twenty-eight consecutive hours and to place them in properly kept pens for rest, water and feeding for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable cause which can not be anticipated or avoided by the exercise of due diligence and foresight, provided the twenty-eight-hour period of time may be extended to a period of thirty-six hours if written request of the owner of the shipment shall be made separate and apart from the printed bill of lading, and also made the duty of the carrier, in default of the owner doing so, to properly feed and water the stock during the rest period. A heavy penalty is imposed upon carriers for noncomplinace with the Federal act. Fed. Stat. Ann. Supp. 1909, pages 43, 44 and 45. Proof that a carrier has failed to comply with this law is certainly evidence of a substantial nature tending to show negligence on its part. Such proof was made in the instant case. It is true the shipper in the instant case accompanied the shipment, but the first opportunity accorded him to feed and water the stock was after they had been continuously aboard the car for forty-one hours.

It can not be said the undisputed evidence shows it was the duty of appellee to place chemicals upon the tails and manes of the animals, and because of his failure to do so, was guilty of negligence. The evidence tended to show it was not a universal practice, so much so as to make it a custom, and not so necessary that the railroad itself exacted such treatment of shippers before receiving stock for shipment. Neither can it be said that the undisputed evidence showed that appellee was guilty of negligence himself for failure to feed and water the stock at the expiration of the thirty-six-hour period, because it appears that no opportunity was accorded him to do so until the stock had been con-

tinuously confined in the car for forty-one hours. There is therefore substantial evidence to support every material allegation necessary to a recovery, and, for that reason the court was correct in refusing to give appellant's requested peremptory instruction.

Appellant insists that the court committed reversible error in giving instruction No. 1, which is as follows: "You are instructed that if you find from the evidence in this case that the plaintiff delivered to the defendant the car load of mules and horses referred to in the complaint, and that on account of the negligence of the defendant in failing to feed and care for said stock, which occurred more than thirty-six hours after delivery to the defendant of said stock, and that the same were damaged in the manner complained of, you will find for the plaintiff, unless it be shown by the evidence that the plaintiff was himself guilty of negligence in the handling of said stock, which contributed to cause the damage of which he complains."

It is said that this instruction in effect assumed that it was the duty of appellant to feed and care for the stock and that it was negligent in failing to do so. If the instruction made the assumption, it was upon condition that it would not be responsible in the event appellee was himself negligent in not caring for the stock. The law imposed the absolute duty to feed and water the stock at the expiration of the thirty-six-hour release period upon appellant, irrespective of any contract with the appellee shifting the duty. Certainly it can not complain of the conditional assumption if it failed to afford appellee the opportunity to feed and water the stock at the expiration of the release period. There was ample evidence to sustain a finding by the jury that no opportunity was afforded him to feed until five hours after the time limit had expired. No prejudice, therefore, could result to appellant if the instruction·did assume that it was appellant's duty to feed and water the stock at the expiration of thirty-six hours.

Appellant insists that no damage was established because the proof showed that the mules could do as much work after their manes and tails had been eaten off as before. This is not the test. The test is, Did the injury to the manes and tails of the animals decrease their market value? The undisputed evidence in this case showed that animals with manes and tails eaten off are not worth as much in the market as if they had their manes and tails.

No error appearing in the record, the judgment is affirmed.